[Civ. No. 20719. Fourth Dist., Div. Two. Dec. 11, 1979.]

MARY GERTRUDE TOLAN, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF
TRANSPORTATION et al., Defendants and Respondents.

COUNSEL

Voorhies, Greene, O'Reilly, Agnew & Broillet, Browne Greene and William N. McMillan for Plaintiff and Appellant.

Richard G. Rypinski, Joseph A. Montoya, Robert L. Meyer, Irwin Schulman and Robert W. Vidor for Defendants and Respondents.

## OPINION

**McDANIEL, J.**—The action in the trial court was for personal injuries suffered by a pedestrian when a motorist jumped an angling curb where the roadway narrows. Among the defendants sued was the State of California, and, with reference to the state and the other public entity defendants, it was alleged that they were "the builders, owners, operators and maintainers" of the public road at the place where it narrowed from four lanes to two lanes.

The state in its answer alleged by way of affirmative defense that the subject portion of the roadway was not owned, maintained or controlled by the state at the time of the injuries suffered by the plaintiff. The defense was raised by way of a motion *in limine.*

At the time the motion was considered, the trial court recited the operative facts as having been stipulated to by the parties. The court's recitation of the stipulation was as follows: "the condition that existed on Brea Street at the time of the accident in 1976, was a condition that existed while the State of California had control and ownership of Brea Boulevard. [¶] That the State of California owned and maintained Brea Boulevard until 1973, when the state relinquished control to the City of Fullerton."

After having recited the stipulation the court framed the issue as follows: "does the control and ownership of the roadway of the state have to be at the time the design and dangerous condition, if it was a dangerous condition, was created, or is the state excluded from liability by the fact that at the time of the accident, it did not own and control the roadway?"

The court, after hearing extensive oral arguments and considering elaborate briefing, ruled that the state was not liable. A judgment of dismissal was entered accordingly, and plaintiff appealed.

ISSUES AND DISCUSSION

█ As stated by the appealing plaintiff, "[t]he sole issue presented on Appeal is whether control and ownership under Government Code Sections 830(c) and 835 must be at the time of the accident or only at the time of the design of the dangerous condition."

█ In California the tort liability of a public entity is wholly statutory. (*Morris v. State of California,* 89 Cal.App.3d 962, 964 [153 Cal.Rptr. 117].) Government Code section 815 restores sovereign immunity in this state except as provided in the Tort Claims Act or other statutes. (*Williams v. Horvath,* 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].)

Liability of a public entity for injury caused by the dangerous condition of public property is governed by Government Code sections 835 and 830. Section 835 reads: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Section 830 provides in pertinent part: "As used in this chapter: ... [¶] (c) 'Property of a public entity' and 'public property' mean real or personal property owned or controlled by the public entity, but do not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity."

█ The state contends, in order to be liable, that the public entity must be the owner or in control of the property at the time of the injury. We agree.

In *Mamola v. County of San Bernardino,* 94 Cal.App.3d 781 [156 Cal.Rptr. 614], we dealt with a similar question relating to the effect of

the state's relinquishment of a highway on its liability for a claimed dangerous and defective condition of the highway. In *Mamola,* the relinquishment to the county reserved to the state an easement for ingress and egress to an adjoining freeway. We rejected plaintiff's contention that reservation of the easement constituted retention of an ownership interest making the road "public property" of the state. We said, "[t]he fact the easement was 'owned' by State, standing alone, creates no liability. 'Property of a public entity' and 'public property' mean real or personal property owned or controlled by the public entity. (Gov. Code, § 830, subd. (c), *supra.*) For liability to be imposed on a public entity for a dangerous condition of property, the entity must be in a position to protect against or warn of the hazard. (Gov. Code, § 835, subd. (b), *supra.*) Therefore, the crucial element is not ownership, but rather control." (*Id.* at p. 788.)

The same principle was applied in *Low* v. *City of Sacramento,* 7 Cal. App.3d 826 [87 Cal.Rptr. 173], where the court held that the critical inquiry in determining whether a public entity is liable for a dangerous condition of public property is whether it "had control, in the sense of power to prevent, remedy or guard against a dangerous condition..." (*Id.* at pp. 833-834.)

We conclude that in providing in Government Code section 835 that a public entity is liable for injury caused by a dangerous condition of "its property," the Legislature meant the public entity having ownership or control of the property at the time of the injury.

Plaintiff argues that making ownership or control at the time of the injury a criterion of liability could result in injustice. She poses a hypothetical situation where the state creates a dangerous condition on a highway, relinquishes the highway to a city, and an accident occurs before the city has notice of the defective condition. Plaintiff suggests that in that circumstance neither the state nor the city could be held liable. The answer here is that, unlike the hypothetical, the accident occurred several years after relinquishment and there is no evidence that the city did not have actual or constructive notice of the alleged defective condition. While we do not purport to decide the issue, if, in the hypothetical situation, the state had knowledge of the defective condition before it relinquished the highway, such notice arguably might be imputed to the city or the city might be deemed to have had constructive notice of the defective condition. Constructive notice is sufficient under Government Code section 835, subdivision (b).

The plaintiff argues further that the state's position here is analogous to that of a landlord out of possession, citing us to *Brennan* v. *Cockrell Investments, Inc.*, 35 Cal.App.3d 796 [111 Cal.Rptr. 122]. *Brennan* was an action for personal injuries by a tenant against his landlord for a defective staircase, and involved the application of section 1714 of the Civil Code, as construed by the Supreme Court in *Rowland* v. *Christian,* 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]. We held in *Brennan* that the trial judge erred in giving instructions based on common law rules of liability instead of on section 1714.

We are at a loss to perceive how the remedy of a "tenant in possession" against a "landlord out of possession" is analogous to the case before us. Having relinquished both control and ownership of the subject portion of Brea Boulevard to the City of Fullerton, the state was not, at the time of the injury in 1976, in the position of a landlord out of possession. It had absolutely no remainder or residual interest in the roadway after the relinquishment.

In both the *Brennan* and *Rowland* cases the persons against whom liability was asserted had some measure of control or occupancy of the premises giving rise to a concomitant duty to remedy or warn of the hazard on the property. In *Rowland* it appeared that the tenant had known of the defect in her apartment for two weeks before the injury and had actually notified the manager of the building of the hazard. That hazard was a cracked handle of a lavatory faucet, and nothing was done to repair the faucet; although clearly the manager could have made the repair. The tenant, as occupant, also was in a position at least to warn her social guests of the hazard which existed with reference to the faucet handle.

Similarly, in *Brennan,* the landlord as owner of the residence had the right to inspect for defects in his property, and this element of "degree of control over the risk creating defect" was one of the factors which the appellate court considered on the issue of whether the landlord measured up to the standard of care prescribed in section 1714 of the Civil Code. (See *Brennan* v. *Cockrell Investments, Inc., supra,* 35 Cal. App.3d 796, 800-801.) In the case here, even if the ordinary rules of negligence were to be applicable to the state, no liability could attach because for three years before the injury the state had no right to control or otherwise remedy the alleged hazard in the portion of Brea Boulevard in question.

In any event, common law principles of negligence, as discussed in *Rowland* and *Brennan* are not controlling herein. Insofar as tort liability is concerned, the Legislature has provided that a public entity's duty of care is only that specifically provided by statute. Government Code section 815, subdivision (a) provides: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

The Legislative Committee comment upon the foregoing section states: "This section abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation. In the absence of a constitutional requirement, public entities may be held liable only if a statute... is found declaring them to be liable...."

In a later decision involving the Tort Claims Act, our Supreme Court in *Williams v. Horvath, supra,* 16 Cal.3d 834, stated: "Government Code section 815 restores sovereign immunity in California except as provided in the Tort Claims Act or other statute. Thus the intent of the act is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances..." (*Id.* at p. 838.)

That the exclusive basis of public entity tort liability is statutory has been reiterated in numerous appellate court decisions. (See, *Morris v. State of California,* 89 Cal.App.3d 962, 964 [153 Cal.Rptr. 117]; *Moncur v. City of Los Angeles,* 68 Cal.App.3d 118, 122 [137 Cal.Rptr. 239]; *Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 819 [131 Cal.Rptr. 854].)

Otherwise, plaintiff also attempts to analogize the argued for liability of the state for a defective condition of this roadway to the liability of a manufacturer of a defective product. The analogy also overlooks what we have already observed, namely, that a public entity's liability for the condition of its property is purely statutory and is circumscribed by the conditions prescribed by the Legislature. (*Williams v. Horvath, supra,* 16 Cal.3d 834, 838.)

Even apart from the exclusive statutory basis of public entity liability, the purported analogy here urged fails for other reasons. Strict

products liability is a unique, court-fashioned doctrine. ■ In an action based on the doctrine, negligence or culpability is not a necessary ingredient; the plaintiff may recover on proof that the product was defective. (*Ault* v. *International Harvester Co.,* 13 Cal.3d 113, 118 [117 Cal.Rptr. 812, 528 P.2d 1148, 74 A.L.R.3d 986].) Indeed, one of the purposes of the doctrine is to relieve the plaintiff from the problems of proof inherent in pursuing negligence and warranty remedies. (See, *Cronin* v. *J.B.E. Olson Corp.,* 8 Cal.3d 121, 133 [104 Cal.Rptr. 433, 501 P.2d 1153].)

However, even when the longstanding rule of sovereign immunity was abrogated by the Supreme Court in *Muskopf* v. *Corning Hospital Dist.,* 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], the requirement of proving some negligence, culpable conduct or fault on the part of the public entity or public employee clearly persisted. "...when there is negligence, the rule is liability, immunity is the exception." (*Id.* at p. 219.) The Tort Claims Act retained the concept of proof of fault and was intended to limit, not expand, public entity liability to specifically delineated circumstances. Hence, strict products liability has no place in governmental tort law, directly or by analogy.

Further, it cannot be said that a highway is a "product" placed in the stream of commerce for profit. It is more akin to a service such as that provided by railroads and other common carriers. ■ ■■■ The important distinction, of course, is that design, construction and maintenance of public highways have always been governmental functions.[1]

Finally, because of the inherent nature of public entity funding, losses traceable to dangerous conditions of highways cannot always be treated as a "cost of production," as with private business entities, for which insurance can be obtained. For these public entities, such as the state, who are wholly self-insured, such losses inevitably translate into additional claims against public funds which are not subject to recoupment by pricing structures.

---

[1]"To lay out and establish roads or highways is exclusively within the power and control of the Government. To do so is one of its most important and onerous duties." (*Sherman* v. *Buick,* 32 Cal. 241, 252-253.)

## DISPOSITION

Based upon the foregoing we hold that the trial court correctly ruled on the state's motion *in limine,* and so the judgment is affirmed.

Tamura, Acting P. J., and Kaufman, J., concurred.