[No. E001693. Fourth Dist., Div. Two. Feb. 20, 1986.]

MARCIA ANN SEARCY, a Minor, etc., Plaintiff and Appellant, v. HEMET UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

**COUNSEL**

David Prescott for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Marvin Goldsmith, Senior Assistant Attorney General, Jeffrey T. Miller, Deputy Attorney General, Sylvester & Oppenheim and Richard D. Oppenheim, Jr., for Defendants and Respondents.

**OPINION**

KAUFMAN, J.—Plaintiff Marcia Ann Searcy appeals from judgments of dismissal following the court's sustaining without leave to amend the demurrers of defendants Hemet Unified School District (School District) and State of California by and through its agent California Highway Patrol (CHP) to plaintiff's second amended complaint. Plaintiff advances a host of contentions directed at demonstrating the demurrers should not have been sustained. We discern no error in the court's rulings and therefore affirm the judgments.

*Facts and Procedural Setting*

On January 6, 1983, plaintiff, a six-year-old first grade student at Ramona Elementary School in Hemet, was struck by an automobile and injured as she walked home after school. The accident occurred in the middle of a block on Girard Street north of Whittier Avenue at a site which was often utilized by school children as a "short cut." The accident site was not part of nor directly contiguous to the school grounds; it was in fact between one-quarter and one-half mile from the school grounds.

Plaintiff's second amended complaint named the driver of the vehicle, Dorothy Susan Gibbel, and the driver's employer, True Cast Concrete, in its count based upon a theory of vehicular negligence. Named as defendants

in other counts were School District, CHP, the County of Riverside (County) and the City of Hemet (City). Plaintiff asserted the following theories of liability against these public entities:

1. Failure to remedy or cause to be remedied an allegedly dangerous condition[1] in the road along plaintiff's route home—School District, CHP, County and City;

2. Negligent creation and/or maintenance of this dangerous condition—County and City;

3. Failure to promulgate and enforce safety standards—CHP and County;

4. Failure to utilize crossing guards—School District, County and City;

5. Failure to teach and develop materials for teaching safety education—School District, CHP and County; and

6. Failure to provide adult supervision for plaintiff's trip home the day of the accident—School District.

School District and CHP demurred to each of plaintiff's counts against them, contending principally that any duty to act was discretionary in nature and could not give rise to tort liability. (Gov. Code, §§ 815.2, subd. (b), 820.2.) The trial court sustained the demurrers and granted judgments of dismissal in favor of School District and CHP. Defendants Gibbel, True Cast Concrete, County and City are not parties to the present appeal.

On appeal, plaintiff does not challenge the trial court's rulings as to School District's failure to provide adult supervision for plaintiff's trip home or CHP's failure to administer safety education and enforce safety standards. Thus, only the following questions remain for our consideration:

1. Did School District or CHP have potential tort liability to plaintiff for failure to remedy a dangerous condition?

2. Did School District have potential tort liability to plaintiff for failure to provide an adequate course of safety education or for failure to employ a crossing guard or cause a crossing guard to be employed at the site of the accident?

---

[1] The "dangerous condition" of the accident site as alleged in the complaint is comprised of the limited visibility of cars approaching the site on Girard Street, the habitual violation of the speed limit by such vehicles, and the frequent mid-block crossing of Girard Street by school children utilizing the "short cut."

*Discussion*

At the outset it must be noted that, in California, all governmental tort liability is dependent upon the existence of an authorizing statute or "enactment." (Gov. Code, §§ 815, subd. (a), 815.6; *Tolan v. State of California* ex rel. *Dept. of Transportation* (1979) 100 Cal.App.3d 980, 983 [161 Cal.Rptr. 307]; *Morris* v. *State of California* (1979) 89 Cal.App.3d 962, 964 [153 Cal.Rptr. 117].)

1. *School District Neither Owns Nor Controls the Property Alleged to Be in Dangerous Condition*

 Plaintiff first attempts to ground School District's liability upon Government Code section 835, which provides in relevant part: ". . . A public entity is liable for injury caused by a dangerous condition of its property . . . ." "Property of a public entity" in turn means real or personal property *owned or controlled* by that public entity. (Gov. Code, § 830, subd. (c).) Although School District's ownership of the property alleged to be in dangerous condition was pled in the complaint, plaintiff has acknowledged in her opening brief that School District does not own the property. Instead, plaintiff argues School District's authority to affect safety conditions so as to increase the safety of pupils traveling to and from school constitutes "control" of the property[2] within the meaning of Government Code section 830, subdivision (c). Not so.

The case of *Low* v. *City of Sacramento* (1970) 7 Cal.App.3d 826 [87 Cal.Rptr. 173] upon which plaintiff places reliance is not on point. The plaintiff in *Low* was injured when she fell into a water-filled depression in a "parking strip" of land between a sidewalk and a street curb outside a County of Sacramento hospital facility. The parking strip was part of the public street easement owned by the City of Sacramento on county land. The court was called upon to interpret that part of Government Code section 830, subdivision (c) which states: "['Property of a public entity' and 'public property'] . . . do not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity." In affirming the trial court's finding of joint liability between the city and county, the court concluded the county retained extensive control over maintenance of the parking strip and the remedying of dangerous conditions upon it. The court stated, "Where the public entity's *relationship to the dangerous property is not clear,* aid may be

---

[2]The "property" to which the complaint refers includes the portion of Girard Street where plaintiff was struck and the remainder of the right-of-way, upon which some condition limiting visibility allegedly existed.

sought by inquiring whether the particular defendant had control, *in the sense of power to prevent, remedy or guard against the dangerous condition;* whether his ownership is a naked title or whether it is coupled with control; and whether a private defendant, having a similar relationship to the property, would be responsible for its safe condition." (*Low, supra,* 7 Cal.App.3d at pp. 833-834, italics added; see also *Holmes* v. *City of Oakland* (1968) 260 Cal.App.2d 378 [67 Cal.Rptr. 197] (holding a city liable under Government Code section 835 to a child injured by a train, where the city had reserved extensive powers to regulate and inspect the railroad company's easement) and *Warden* v. *City of Los Angeles* (1975) 13 Cal.3d 297 [118 Cal.Rptr. 487, 530 P.2d 175] (holding a city liable for a dangerous condition caused by a submerged municipal sewer pipe in federal waters).)

Citing several statutes concerning the role school districts play in student safety, plaintiff asserts, in the parlance of *Low,* that School District possessed the "power to prevent, remedy or guard against the dangerous condition," i.e., it had control for the purposes of section 835 liability. Included in plaintiff's statutory recitation are Education Code section 39607, which gives school districts permissive authority to construct and maintain ". . . pedestrian walks, footbridges, and pedestrian tunnels when required for the safety of pupils attending the schools of the district," and Vehicle Code section 21373, which authorizes school districts to request city, county and state agencies to install traffic control devices. Plaintiff also cites the guidelines in the School Area Pedestrian Safety manual promulgated in 1979 by the California Department of Transportation pursuant to Vehicle Code section 21372[3] (see fn. 4, *post*). Without enlarging the authority of school districts over traffic safety along student transportation routes, these guidelines only recommend standards and procedures aimed at bringing about desirable safety conditions.

■ Not having been drafted by School District, however, the guidelines in the School Area Pedestrian Safety manual are not internally binding upon the District. (Cf. *Clemente* v. *State of California* (1985) 40 Cal.3d 202, 214-216 [219 Cal.Rptr. 445, 707 P.2d 818].) ■ Moreover, we cannot agree the authority of school districts to influence traffic control measures and effectuate student safety found in these sources provides the kind or

---

[3]Vehicle Code section 21372 provides: "The Department of Transportation and local authorities shall, with respect to highways under their respective jurisdictions, establish and promulgate warrants to be used as guidelines for the placement of traffic control devices near schools for the purpose of protecting students going to and from school. Such devices may include flashing signals. Such warrants shall be based upon, but need not be limited to, the following items: pedestrian volumes, vehicle volumes, width of the roadway, physical terrain, speed of vehicle traffic, horizontal and vertical alignment of the roadway, the distance to existing traffic control devices, proximity to the school, and the degree of urban or rural environment of the area."

degree of control necessary for section 835 liability. Unlike the situation in *Low,* the present case does not involve contiguous land parcels or property concerning which there are overlapping or conflicting layers of authority. Instead, the property over which plaintiff contends School District had control is located a considerable distance from the school grounds. The complaint specifies no authority which empowers or requires School District to manage the property on an ongoing basis or to erect barriers or traffic controls that might control pedestrian and vehicular traffic over the property. (See, e.g., *Fuller* v. *State of California* (1975) 51 Cal.App.3d 926, 947 [125 Cal.Rptr. 586].) The *Low*-type inquiry and result are only appropriate ". . . [w]here the public entity's relationship to the dangerous property is not clear. . . ." (*Low* v. *City of Sacramento, supra,* 7 Cal.App.3d at p. 833.) Here, it is clear that School District lacks the kind and degree of nonownership control over the property sufficient to give rise to liability under Government Code section 835.

*2. Neither the School District nor the CHP Has A Mandatory Duty under Statute to Remedy or Cause the Remedy of the Allegedly Dangerous Condition*

■ Plaintiff next posits potential liability of School District on Government Code section 815.6, which provides in relevant part: "Where a public entity is under a *mandatory* duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (Italics added.)

Plaintiff contends several passages from the School Area Pedestrian Safety manual, described *ante,* place a mandatory duty upon School District to remedy the dangerous condition alleged in this case. We set out the relevant portions of this manual in the margin.[4] Plaintiff also argues that these same

---

[4] "10-01.1. GENERAL. The safety of students enroute to and from school is the joint responsibility of parents, school administrators, other public officials and the general public. . . .

"10-03.1. POLICY. There is a need in each school district to establish an organization concerned with the safety of students enroute to and from school. Through such an organization the school district can be responsibly involved in processing requests for traffic safety controls and for safety programs, and through its action can coordinate activities within and between the community and public agencies.

"In order to provide a responsible administrative structure for school area protection, each school district is encouraged to (1) assign student safety responsibilities to a competent staff member and/or (2) organize a school safety advisory committee to serve the needs of each public and/or private school. . . .

"10-03.3. SCHOOL RESPONSIBILITY. The principal or designated staff person of every school through 12th grade should: 1. Develop cooperatively with local officials a 'Suggested

guidelines from the traffic safety manual, along with Vehicle Code sections 21372 (requiring the Department of Transportation and "local authorities" to promulgate traffic control guidelines for school areas) and 21373 authorizing school districts to request other agencies to install traffic control devices, impose a mandatory duty on CHP.

Plaintiff's contentions are not persuasive. The recommendatory, nonmandatory quality of the traffic control *guidelines* in the safety manual is self evident. (See fn. 3, *ante.*) Although these advisory materials can be utilized by governmental agencies to improve student safety, the authority they provide is discretionary; they do not impose mandatory duties upon School District or CHP within the meaning of Government Code section 815.6.[5] (See, e.g., *Vedder* v. *County of Imperial* (1974) 36 Cal.App.3d 654, 661-662 [111 Cal.Rptr. 728].) Moreover, both Vehicle Code sections cited by plaintiff are inapplicable either to CHP or School District in this case. Neither of them is a part of the Department of Transportation or a "local authority" within the meaning of section 21372 (Veh. Code, § 385).[6] Even if Vehicle Code section 21373 were construed to require CHP to install traffic control devices if requested to do so by School District there is no allegation in the complaint that such an interagency request was made.

■ Plaintiff separately attempts to establish mandatory duties on the part of School District and CHP by alleging on information and belief that there exist "other and additional duly adopted enactments" and other unspecified "enactments." These unspecified and unidentified sources of law are alleged to create mandatory duties upon School District and/or CHP concerning the reporting or correction of dangerous conditions, the hiring of crossing guards, and the provision of safety instruction. Plaintiff urges the facial uncertainty of the complaint as to the identity of these enactments should not undermine her statutory cause of action under Government Code section 815.6, because the complaint's uncertainty ". . . was capable of resolution by reference to facts presumptively within the knowledge of [School District and CHP] . . . ." (See *Green* v. *City of Livermore* (1981) 117 Cal.App.3d 82, 90 [172 Cal.Rptr. 461].) We do not agree.

---

Route to School' plan showing all streets, school location and the routes to be used by students enroute to and from school. . . . 2. Instruct the students on the use and purpose of the 'Suggested Route to School' plan. 3. Make periodic field reviews of the plan to ensure that the 'Suggested Route to School' plan is being used. . . . 4. Review the 'Suggested Route to School' plan annually for any necessary revisions or additions. . . . [¶] The school district shall contact the local public agency directly in those cases where financial participation by the school district is required."

[5]Having concluded these guidelines do not create mandatory duties, we need not consider whether they qualify as "enactments" under Government Code section 815.6.

[6]Vehicle Code section 385 provides: " 'Local authorities' means the legislative body of every county or municipality having authority to adopt local police regulations."

■ In the first place, "enactments" are generally a matter of public record, and facts that are ascertainable from public records may not properly be pleaded on information and belief. (*Art Metal Const. Co.* v. *A. F. Anderson Co.* (1920) 182 Cal. 29, 33 [186 P. 776]; *People* v. *Birch Securities Co.* (1948) 86 Cal.App.2d 703, 708 [196 P.2d 143]; *Brooks* v. *Nelson* (1928) 95 Cal.App. 144, 149-150 [272 P. 610]; *William Wilson Co.* v. *Trainor* (1915) 27 Cal.App. 43, 45 [148 P. 954].)

■ Secondly, in California all government tort liability is dependent on the existence of an authorizing statute or "enactment" (Gov. Code, §§ 815, subd. (a), 815.6; *Tolan* v. *State of California* ex rel. *Dept. of Transportation, supra,* 100 Cal.App.3d 980, 983; *Morris* v. *State of California, supra,* 89 Cal.App.3d 962, 964; *Susman* v. *City of Los Angeles* (1969) 269 Cal.App.2d 803, 808 [75 Cal.Rptr. 240]), and to state a cause of action every fact essential to the existence of statutory liability must be pleaded with particularity, including the existence of a statutory duty. (*Susman* v. *City of Los Angeles, supra,* 269 Cal.App.2d 803, 809.) Duty cannot be alleged simply by stating "defendant had a duty under the law"; that is a conclusion of law, not an allegation of fact. The facts showing the existence of the claimed duty must be alleged. (*Id.;* see also *Rubinow* v. *County of San Bernardino* (1959) 169 Cal.App.2d 67, 71 [336 P.2d 968].) Since the duty of a governmental agency can only be created by statute or "enactment," the statute or "enactment" claimed to establish the duty must at the very least be identified.

■ It may be that in *Green* v. *City of Livermore, supra,* 117 Cal.App.3d 82, 90, the court could rightly say the undesignated police regulations were presumptively within the knowledge of the city. Here that is not the case and thus plaintiff cannot successfully allege the existence of a mandatory duty on the basis of information and belief alone. To the extent our conclusion may be at odds with the *Green* decision, we do not agree with it.

Some reference is made in plaintiff's briefs to the possibility of unidentified "joint powers agreements" between the County of Riverside and School District. The second amended complaint does allege the existence of "an agreement, or series of agreements" of this kind, but without any identification whatsoever. Such an allegation places nothing in issue for the same reasons the allegations of unidentified and unidentifiable "enactments" fail to do so.

Plaintiff's reliance on *Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508 [150 Cal.Rptr. 1, 585 P.2d 851] is wholly unwarranted. It is true that in *Hoyem* the California Supreme Court recognized potential

liability on the part of a school district where a student was injured when struck by a motorcycle away from school grounds. However, the basis for potential liability was the district's allegedly negligent failure to supervise the injured student during school hours on school premises, allowing the student to leave the school grounds during the hours he was supposed to be attending classes. (*Id.*, at pp. 518, 523.) The court plainly stated: "Contrary to defendant's assertions, our holding in no way expands the supervisory obligations of school districts and does not place a new duty upon school authorities to control the conduct of students when they are off school premises. As we have explained, defendant's liability in this case is posited not on an alleged failure to supervise Michael when he was off the school premises, but rather on an alleged failure to exercise due care *in supervision on school premises.* Defendant will be held liable for Michael's injuries only if the jury concludes that defendant's on-site supervision was negligent and that such negligence was a proximate cause of those injuries." (*Id.*, at p. 523, orig. italics.)

### 3. *Special Relationship Doctrine Not Applicable to School District or CHP*

■ Plaintiff's final contention regarding the alleged dangerous condition which purportedly caused her injury involves the special relationship doctrine of *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]. ■ This doctrine creates an exception to the common law rule that one person owes no duty to control the conduct of another or to warn those endangered by conduct of third persons. A duty may be found under this exception where the defendant stands in some special relationship to either the person whose conduct needs to be controlled or to the foreseeable victim of that conduct. (*Tarasoff, supra,* 17 Cal.3d at p. 435.)

■ Under Government Code sections 815.2, subdivision (a), and 820, subdivision (a),[7] plaintiff theorizes that School District and CHP employees, named in the complaint as "Doe" defendants, owed plaintiff a duty under the special relationship doctrine and that School District and CHP vicariously share liability for the breach of that duty. Plaintiff asserts School District shared a special relationship with her which justifies the imposition of a duty to inspect her route to and from school for dangerous conditions

---

[7]Government Code section 815.2, subdivision (a), provides: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Government Code section 820, subdivision (a), provides: "Except as otherwise provided by statute . . . a public employee is liable for injury caused by his act or omission to the same extent as a private person."

and to warn other public entities of any danger discovered. Plaintiff separately alleges a special relationship between CHP and the County of Riverside, requiring CHP to warn County and/or School District of known dangerous conditions along her route to and from school. We believe not.

The special relationship doctrine may serve as the basis for establishing negligence and liability on the part of a school district for breach of the long-established duty of schools to supervise students in their charge and protect them against harm from others on school premises during the school day. (See, e.g., *Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492, 499 [147 Cal.Rptr. 898]; see also Prosser & Keeton on Torts (5th ed. 1984) § 56, p. 383, fn. 11 and cases there cited.) But plaintiff cites no case in which the special relationship doctrine was found to impose a protective duty where none otherwise existed, as when a student had departed homeward after school hours. School districts and their employees are not insurers of the physical safety of their students (*Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 [87 Cal.Rptr. 376, 470 P.2d 360]), notwithstanding their discretionary authority to influence conditions affecting the safety of students' transportation to and from school. In light of California's statutory scheme of limited governmental liability, the special relationship doctrine can impose no greater duty of protection on school districts for off-school-grounds hazards than the Legislature has authorized by statute. (See Ed. Code, § 44808; see also *Hoyem* v. *Manhattan Beach City Sch. Dist.*, *supra*, 22 Cal.3d 508, 517.)

As to CHP, plaintiff's special relationship contention is specious. Even if such a duty could be imposed independently of statute or "enactment," County and CHP clearly do not occupy the kind of relationship that would trigger a duty under *Tarasoff*. (See generally *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 749-758 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

4. *School District Has No Mandatory Duty to Employ Crossing Guards or Teach Safety Education*

As a general rule school districts are under no obligation to supply traffic protection to students en route to and from school. (Ed. Code, § 44808; *Hoyem* v. *Manhattan Beach City Sch. Dist.*, *supra*, 22 Cal.3d at pp. 517-518; see also *Wright* v. *Arcade School Dist.* (1964) 230 Cal.App.2d 272 [40 Cal.Rptr. 812].) However, plaintiff once again seeks to manufacture a mandatory duty by arguing School District's discretionary powers to hire crossing guards (see Ed. Code, §§ 45450 through 45452; see also Sts. & Hy. Code, § 2118.5), require it to do so. Irrespective of extrinsic arguments concerning public policy and legislative intent, these statutes merely dele-

gate authority and budgetary power to effect a school safety program and no mandatory duty to employ a crossing guard at a particular location arises therefrom.

For similar reasons, we do not discern in statutes such as Education Code sections 44805, 51050, and 51202,[8] which set out curricular responsibilities and recommendations, any legislative intent to create a mandatory duty to instruct students on the particulars of how and where to cross public thoroughfares and, in turn, to impose governmental tort liability for failure to do so. (See *Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814 [131 Cal.Rptr. 854].)

### Disposition

The judgment is affirmed.

Morris, P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied March 7, 1986, and appellant's petition for review by the Supreme Court was denied May 7, 1986.

---

[8]Education Code section 51202 reads: "The adopted course of study shall provide instruction at the appropriate elementary and secondary grade levels and subject areas in personal and public safety and accident prevention, including emergency first aid instruction, instruction in hemorrhage control, treatment for poisoning, resuscitation techniques, and cardiopulmonary resuscitation when appropriate equipment is available; fire prevention; the protection and conservation of resources, including the necessity for the protection of our environment; and health, including venereal disease and the effects of alcohol, narcotics, drugs, and tobacco upon the human body."