[No. A042520. First Dist., Div. One. Feb. 23, 1990.]

GARNOLD JOHN FRAZIER, Plaintiff and Appellant, v. COUNTY OF SONOMA, Defendant and Respondent.

[Opinion certified for partial publication.*]

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of material in double brackets, [[ ]].

**COUNSEL**

James Cameron for Plaintiff and Appellant.

Mark D. Peters and Senneff, Bernheim, Emery & Kelly for Defendant and Respondent.

## OPINION

**HOLMDAHL, J.**—The trial court rejected the claim of a motorcyclist that Sonoma County was to blame for the injuries which he suffered in a traffic accident, because of the dangerous condition of the roads where the accident occurred. The motorcyclist appeals from the judgment of nonsuit entered against him.

The judgment is affirmed.

### Facts

At about 8:20 p.m. on Wednesday May 18, 1983, James Cote drove a pickup truck south on the Bohemian Highway in a semirural area of Sonoma County near the Russian River. When Cote got to the intersection of the Bohemian Highway with River Boulevard, he made a left turn and headed east on River Boulevard. There was a freshly painted double yellow line running along the middle of River Boulevard east of the intersection.

At the time Cote was making his left turn, plaintiff-appellant Garnold John Frazier was riding a motorcycle west on River Boulevard toward the intersection with the Bohemian Highway. The speed limit there was 25 miles per hour, but Frazier was going about 40 miles per hour. Frazier's motorcycle collided head on with the truck which Cote was driving. Just before the collision, Frazier was looking at some persons who were barbecuing on the upstairs deck of a house on the south side of the road and was waving to those persons.[1]

The collision took place at a point approximately 102 feet east of the intersection of River Boulevard with the Bohemian Highway. The motorcycle was between one and one-half and four feet north of the double yellow line, in the westbound lane. The truck was at least three-quarters in the westbound lane. Cote had slammed on his brakes and skidded about 10 feet before the collision, but there was no indication that Frazier had done anything to avoid the collision or to lessen its impact, except, of course, to stay in his own lane.

Frazier suffered injuries as a result of the collision, including a concussion, a broken arm, a broken leg, and a shoulder separation.

---

[1] The parties stipulated, during *in limine* proceedings, that Frazier was admitted to a hospital after the collision, and that a blood test taken at the hospital revealed that he had a blood-alcohol level of .194 percent. As far as the record reveals, that stipulation was never presented to the jury.

*Procedural History*

On May 17, 1984, Frazier sued Cote, the registered owner of the truck which Cote was driving, and the County of Sonoma (the county). A first amended complaint, filed October 1, 1984, alleged that the collision in which Frazier had been hurt occurred because the roadways in the vicinity of the collision were in such a dangerous and defective condition, as a result of the county's negligent maintenance of those roadways, that the collision occurred despite the fact that Frazier was riding his motorcycle "in a safe and lawful manner."

Only the county appeared and defended the suit. Jury trial began on March 22, 1988. At the conclusion of Frazier's case, the court granted the county's motion for a nonsuit (Code Civ. Proc., § 581c) and awarded Frazier a judgment of $314,500 against the defaulting Cote. Frazier appeals from the judgment of nonsuit.

[[ ]]*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*Plaintiff's Offer of Substantial Evidence in Support of His Burden of Proof*

The county's liability or lack thereof for Frazier's injuries is governed by statutes, and particularly by title 1, division 3.6 of the California Government Code (§§ 810-996.6), generally referred to as the California Tort Claims Act of 1963.[2] (§ 815; *Tolan* v. *State of California* ex rel. *Dept. of Transportation* (1979) 100 Cal.App.3d 980, 983 [161 Cal.Rptr. 307]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 129, p. 210.) Frazier relies on section 835, which provides as follows. "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice

---

*See footnote, *ante,* page 454.

[2] All statutory references hereinafter, unless otherwise noted, are to the Government Code.

of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

■ To prevail at trial, Frazier had to prove not only that the county owned or controlled the roads involved in the accident (*Tolan* v. *State of California* ex rel. *Dept. of Transportation, supra*, 100 Cal.App.3d at p. 983), but all four of the elements which section 835 prescribes as prerequisites to the liability of a public entity. (See *Mittenhuber* v. *City of Redondo Beach* (1983) 142 Cal.App.3d 1, 5 [190 Cal.Rptr. 694].) Those four elements were: (1) That the roads involved were in a dangerous condition at the time of the accident; (2) that the dangerous condition caused the accident; (3) that the accident occurred in a way which the county could reasonably anticipate would result from the dangerous condition; and, (4) that the dangerous condition resulted either from the county's negligence or from the county's failure to take reasonably prompt remedial action in response to notice of the condition. Failure to prove any of these elements would be cause for reversal of a judgment in Frazier's favor. Similarly, failure to prove any of them is cause for a judgment of nonsuit and affirmance of that judgment. (*Miller* v. *Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 703-704 [106 Cal.Rptr. 1, 505 P.2d 193]; *Mikialian* v. *City of Los Angeles* (1978) 79 Cal.App.3d 150, 158 [144 Cal.Rptr. 794].)

First, we consider the question of whether a "dangerous condition" existed, within the meaning of that term as used in the California Tort Claims Act. Frazier's theory at trial was that the intersection of River Boulevard with the Bohemian Highway was public property which was in a dangerous condition, because drivers making the left turn which Cote did had a tendency to cut the corner, turning east into the westbound lane of River Boulevard. Frazier's expert witness was Harry Krueper, a traffic engineer of long experience. Krueper thought that painted traffic islands at that intersection, which could be put in at a cost of less than $500, would discourage such corner cutting and reduce the likelihood of an accident like that in which Frazier was hurt. In the expert's opinion, lack of such traffic islands was the cause of the accident.

In traffic accident cases, there are sections of the California Tort Claims Act which limit the liability established by section 835. Two such sections which might be applicable in the present traffic accident case are sections 830.4 and 830.8.

Section 830.4 provides, "A condition is not a dangerous condition within the meaning of this chapter [§§ 830-840.6] merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or dis-

tinctive roadway markings as described in Section 21460 of the Vehicle Code."

Section 830.8 provides, "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or devise (other than one described in section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care."

■ Since Frazier's theory was that a failure to provide markings on the roadway caused the accident, we must determine whether the markings in question were of the regulatory type described in section 830.4 or of the warning type described in 830.8, which, by its terms, does not apply in cases involving the type of markings described in section 830.4. (See *Black* v. *County of Los Angeles* (1976) 55 Cal.App.3d 920, 932-933 [127 Cal.Rptr. 916].)

Krueper described the painted islands which he recommended as consisting of double yellow lines with white striping inside. Section 830.4 describes the markings to which it refers as "distinctive roadway markings as described in Section 21460 of the Vehicle Code." The first type of distinctive roadway marking described in Vehicle Code section 21460 is "double parallel solid lines." Krueper explained that the markings which he recommended would "provide an island area that is clearly visible for traffic coming out . . . Bohemian . . . so that they are forced into the proper eastbound lane." Vehicle Code section 21459, subdivision (c), provides that "[a]ny pavement marking other than as described in this section . . . shall not be effective to indicate no driving over or to the left of the marking." The only pavement markings described in Vehicle Code section 21459 are "distinctive roadway markings as described . . . in Section 21460." (Veh. Code, § 21459, subd. (a).)

We are satisfied that the type of markings which Frazier claims would have prevented his accident are the regulatory kind described in section 830.4, for two reasons. First, section 830.4 incorporates Vehicle Code section 21460 by reference, and Vehicle Code section 21460 describes the same kind of markings as those which Krueper recommended, double parallel solid lines. Second, Krueper's assessment of the effect of those markings, to indicate to drivers that they must stay to the right of the markings, reinforces the conclusion that he must have been talking about the kind of

markings described in section 830.4 through its incorporation of Vehicle Code section 21460, because only the kind of markings described in Vehicle Code section 21460 could have that effect, according to Vehicle Code section 21459, subdivision (c).

Since section 830.4 applies and 830.8 does not, we need not concern ourselves with the second sentence of section 830.8, providing for liability of a public entity for failure to provide pavement markings under certain circumstances. The only question is whether the condition of the intersection of which Frazier complains is allegedly dangerous "merely because of the failure to provide" the "distinctive roadway markings" which Krueper recommended.

Krueper reviewed other possible modifications to the intersection in the course of his testimony but rejected them for one reason or another. He did not feel that any massive alterations in the intersection were appropriate. "We are not talking about reconstructing the intersection. . . . Not to tear up any asphalt or anything just put paint on the roadway surface so it's clearly defineable." He thought that raised concrete traffic islands would be inappropriate because they in themselves could be a traffic hazard, causing drivers who accidentally hit them to lose control.

Careful review of the record, with particular attention to Krueper's testimony, reveals that the only road condition revealed by the evidence on which Frazier's theory of the case relied and, indeed, the only road condition which had any colorable causal relationship to the accident, was the absence of distinctive markings which, if Cote had heeded them, would have caused him to enter River Boulevard on the right side and, presumably, to stay on the right side of the road. In his briefing on appeal, Frazier alludes to evidence that brush on the north side of River Boulevard obscured his view of a stop sign at the intersection of River Boulevard with the Bohemian Highway, which he was approaching at the time he collided with Cote's truck. He points out that the court held a similar condition could constitute a dangerous condition of public property in *De La Rosa* v. *City of San Bernardino* (1971) 16 Cal.App.3d 739, 745-746 [94 Cal.Rptr. 175]. However, neither the evidence presented at trial nor the arguments of counsel, at trial or on appeal, suggest any causal relationship between the brush and the crash. Frazier's brief on appeal does argue causation, but only with respect to the absence of the traffic control markings which Krueper recommended, asserting "that the improperly marked intersection [was] the direct and proximate cause of" the accident and his injuries.

Since those markings are of the regulatory type to which section 830.4 refers, their absence was not a dangerous condition which could cause

liability to attach to the county, by statutory definition. In light of that statutory definition, contained in section 830.4, "no reasonable trier of fact could have found for the plaintiff on the facts shown." (*O'Keefe* v. *South End Rowing Club* (1966) 64 Cal.2d 729, 746 [51 Cal.Rptr. 534, 414 P.2d 830, 16 A.L.R.3d 1].) As a matter of law, Frazier failed to prove his case. If judgment had been in Frazier's favor, that judgment could not have been sustained on appeal on the basis of the evidence which Frazier presented at trial. The trial court was accordingly correct in granting the county's motion for nonsuit. (*Raber* v. *Tumin* (1951) 36 Cal.2d 654, 656 [226 P.2d 574], quoting *Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768].)

The applicability of the limitation of liability established by section 830.4 obviates any need to discuss the applicability of the more general limitation of liability established by section 830.2.[3] Similarly, the conclusion that the roads in question were not, as a matter of statutory definition, in a dangerous condition obviates any need to discuss the parties' contentions with respect to the other three elements which Frazier had to prove to establish county liability for his injuries. (*Mikialian* v. *City of Los Angeles, supra*, 79 Cal.App.3d at p. 166.)

The judgment is affirmed.

Newsom, Acting P. J., and Stein, J., concurred.

---

[3] Section 830.2 provides, "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."