Filed 7/26/24  Elie v. Los Angeles Unified School Dist. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LUC-RICHARD ELIE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LOS ANGELES UNIFIED SCHOOL DISTRICT et al.,<br><br>    Defendants and Respondents. | B328539<br><br>(Los Angeles County Super. Ct. No. 21STCV31093) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge.  Affirmed.

Keiter Appellate Law and Mitchell Keiter for Plaintiff and Appellant.

Vanderford & Ruiz, Rodolfo F. Ruiz, Mark R. Irvine and Matilda Barseghian for Defendants and Respondents.

_____

Luc-Richard Elie's teenage son Xavier committed suicide off campus, after school. Elie sued the Los Angeles Unified School District (LAUSD) and its employees for negligence, alleging that his son's mental health issues obliged them to take protective measures. The trial court dismissed the case after sustaining demurrers without leave to amend.

On de novo review, we conclude that defendants are immune from liability. Xavier was not at school, or on a school bus, or on a school-sponsored outing, nor did defendants expressly assume responsibility for him. (Ed. Code, § 44808.)[1] Defendants did not owe a duty to prevent the suicide. They did not have custody or control over him, nor did they deliberately induce the emotional state that led to his death. We affirm.

## ALLEGATIONS

When Xavier enrolled at North Hollywood High School in the fall of 2017, he suffered from emotional issues, including impulsivity, posttraumatic stress disorder, depression, and anxiety. LAUSD implemented an Individualized Education Plan (IEP) for him. In April 2018, Xavier walked to a freeway, where he was intercepted by police. He agreed to a psychiatric hospitalization.

A safety plan was drafted when Xavier resumed his studies, but no one was assigned to oversee or implement it. LAUSD had the names of Xavier's health care providers but did not request his mental health records or interact with his care providers. LAUSD employees at the school included psychologist Samuel Schwarzmer; school principal Ricardo Rosales; and assistant principal Carrie Schwartz.

---

[1] Undesignated statutory references are to the Education Code.

2

Xavier completed the semester, enrolled in summer school, then began the fall 2018 school year. He was supposed to have 90 minutes of counseling per month; sometimes an intern did the counseling. Xavier began to show signs of depression and had difficulty coping.

On February 7, 2019, Xavier acted out during an afternoon Spanish class. After class, the teacher had Xavier call plaintiff on his cell phone to discuss his behavior. Plaintiff told the teacher that he would deal with any punishment when he saw Xavier at home. Afterward, Xavier looked upset, hit lockers in the hallway, and left campus. His sixth period teacher learned that he left campus and called Schwarzmer, who notified school police, but did not alert Rosales, a crisis team, or plaintiff.

Xavier returned to campus during the class period. He was agitated, appeared to have been crying, and asked for Schwarzmer. The two spoke for about 20 minutes. Schwarzmer did not perform an assessment risk, move Xavier to a contained location, call 911, or contact a crisis or suicide risk assessment team. Schwartz similarly failed to act.

Xavier again left campus. Schwarzmer followed, but could not catch up to him. He alerted LAUSD police. It is unclear if officers were aware of Xavier's history or that he needed a mental health evaluation. Schwarzmer called plaintiff and his wife, after Schwartz reminded him to contact Xavier's family.

Xavier walked home from school. LAUSD officers who followed him said they were not advised that he was at risk for suicide or needed to go for a psychiatric evaluation. After watching Xavier enter the courtyard of his apartment complex, they returned to campus and informed Schwarzmer that Xavier had arrived at home.

3

Xavier walked to the door of his home. His stepmother saw him through the window but was unaware that he needed help. He had an afternoon appointment that day. She believes he put his backpack by the door and left, to avoid waking his baby sister. After he left, the stepmother received a call from Schwarzmer, who did not fully communicate his concerns or the day's events.

Xavier's stepmother later called 911 and reported him missing. He was located in the early evening on top of a building. Before his parents arrived, he committed suicide.

## PROCEDURAL HISTORY

The third amended complaint (TAC) alleges that plaintiff filed suit in federal district court, asserting claims for negligence; negligent supervision and hiring; violation of the Americans with Disabilities Act; violation of the Rehabilitation Act; and wrongful death. We have taken judicial notice of the federal suit, as did the trial court. (Evid. Code, §§ 452, subd. (d), 459.)

In federal court, plaintiff admitted that (a) his wife saw Xavier walk up the staircase to the door of their apartment around 3:20 p.m., after the school day ended; (b) Schwarzmer called plaintiff and his wife around 3:30 p.m. to tell them what happened; (c) the stepmother called 911 at 4:24 p.m. to report him missing when he failed to show up at a 4:00 appointment with his therapist; and (d) Xavier jumped from an office building at 5:50 p.m. The court granted summary judgment for LAUSD on the federal claims and declined to exercise jurisdiction over plaintiff's state law claims for negligence.

After the federal suit ended, plaintiff filed suit in state court against LAUSD, Rosales, Schwarzmer, and Schwartz. The trial court initially sustained demurrers with leave to amend.

4

Plaintiff's TAC asserts causes of action for negligence and negligent supervision.

Defendants demurred to the TAC, arguing that Xavier was not under their supervision or custody when he took his life; the suicide was not foreseeable; and they did not cause him to have an uncontrollable impulse to commit suicide. Defendants also argued that the lawsuit is barred by collateral estoppel, owing to the federal lawsuit. Plaintiff opposed the demurrer, arguing that collateral estoppel does not apply and that defendants owed Xavier a duty to supervise and protect him from suicide.

## THE COURT'S RULING

The court sustained demurrers to the TAC without leave to amend. It ruled that a defendant is not liable for suicide unless it negligently causes "an uncontrollable impulse to commit suicide." Plaintiff failed to state facts showing that defendants caused Xavier's suicidal impulse. He was troubled when he came to LAUSD and there is no allegation that defendants did anything harmful, such as harassing, embarrassing, or bullying him.[2] Nor did LAUSD have physical custody or substantial control over him. Xavier left school custody when he walked into his apartment complex. His stepmother saw him arrive, as was typical after a school day. The court dismissed the TAC and entered judgment for defendants.

## DISCUSSION

### 1. Appeal and Review

Appeal lies from a judgment of dismissal after demurrers are sustained without leave to amend. (Code Civ. Proc., §§ 581d,

---

[2] Plaintiff concedes on appeal that defendants did not affirmatively cause Xavier to have an uncontrollable impulse to commit suicide.

5

904.1, subd. (a)(1); *Serra Canyon Co. v. California Coastal Com.* (2004) 120 Cal.App.4th 663, 667.) We review pleadings de novo to determine if a cause of action has been stated, accepting the truth of material allegations but not the truth of contentions, deductions, or conclusions of fact or law. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

## 2. Immunity From Liability

Section 44808 immunizes public schools and employees from liability for student safety off school grounds unless they fail to exercise reasonable care (1) while transporting the student to or from school; (2) while the student is off campus on a school-sponsored activity; or (3) when the school specifically assumes responsibility or liability for the student, who is under the immediate and direct supervision of an employee.[3]

The trial court did not cite section 44808 or address immunity from liability, but plaintiff raises the statute on appeal. This is permissible. (*Connerly v. State of California* (2014) 229

---

[3] The statute reads, "no school district . . . or any officer or employee of such district . . . shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district . . . has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances. [¶] In the event of such a specific undertaking, the district, board, or person shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board." (§ 44808.)

6

Cal.App.4th 457, 460 [plaintiff may raise new legal theories on appeal, after demurrers are sustained without leave to amend].) As a rule, "governmental immunity provided by statute will override . . . a statute imposing general liability for tortious conduct." (*Esparza v. County of Los Angeles* (2014) 224 Cal.App.4th 452, 461.)

Plaintiff does not claim that Xavier was injured on school property, while being transported by school bus, or while engaged in a school-sponsored activity. He does not allege facts showing that defendants "specifically assumed . . . responsibility or liability" for Xavier after school. (§ 44808.) "Overwhelmingly, the courts have held that section 44808 ' "grants . . . immunity unless a student was (or should have been) directly supervised during a specified undertaking." ' " (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1358.)

"School districts and their employees have never been considered insurers of the physical safety of their students," but must supervise them during school sessions, activities, recess, and lunch periods. (*Bartell v. Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492, 498.) The duty to supervise ends after the student returns home. By plaintiff's reasoning, schools would be responsible for a troubled student's safety at all times, including nights or weekends. Avoiding such broad liability is precisely why the Legislature enacted section 44808, which states that a school district "shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee."

Plaintiff theorizes that defendants are liable "not only when the student is within the school's physical control but also when *he should have been*," adding that LAUSD's "failure to keep

7

Xavier on campus did not cloak it with immunity." It is untenable to argue that defendants could force Xavier to remain on campus involuntarily at the end of the school day.

Xavier had returned home and was not under the supervision of LAUSD employees when he died. Police saw him enter his apartment complex; his stepmother saw him approach their door, then leave for his appointment. When plaintiff spoke to the Spanish teacher, he knew that Xavier was having problems. Both parents spoke to Schwarzmer, who disclosed Xavier's behavior. Plaintiff did not react, yet faults defendants for failing to do something at the end of the school day.

Plaintiff believes it is significant that LAUSD implemented an IEP for Xavier. Contrary to plaintiff's belief, the purpose of an IEP is not "to protect him from harm." "[T]he essential function of an IEP is to set out a plan for pursuing academic and functional advancement" so that a disabled child will not be excluded from school or sit idly in a classroom. (*Endrew F. v. Douglas Cnty. Sch. Dist. RE-1* (2017) 580 U.S. 386, 399–400 [137 S.Ct. 988, 197 L.Ed.2d 335].) Crafted by teachers, parents and school officials, an IEP is "a personalized plan to meet all of the child's 'educational needs' " to ensure " 'progress in the general education curriculum.' " (*Fry v. Napoleon Cmty. Sch.* (2017) 580 U.S. 154, 158–159 [137 S.Ct. 743, 197 L.Ed.2d 46].) LAUSD's creation of an IEP did not impose upon it a duty to protect him from self-harm outside of school hours.

Plaintiff points to suicide prevention policies promulgated by LAUSD in 2018. As alleged in the TAC, the bulletin outlining these policies lists steps that "should be carried out" if a student is at risk of suicide, including notifying police, speaking to the student, and communicating with the parent. The TAC shows

8

that these steps were all taken.  The existence of the bulletin does not nullify the immunity provided by section 44808 for student conduct after school hours.

We are guided by *LeRoy v. Yarboi* (2021) 71 Cal.App.5th 737 (*LeRoy*).  In *LeRoy,* a student with a disability was physically and emotionally bullied.  He entered a special schooling program and was referred to the school psychologist.  Two days after the term ended, the student committed suicide at home.  His parents sued for negligence, alleging that the school knew of the boy's difficulties, but did not adequately respond.  (*Id.* at pp. 739–741.) Summary judgment was granted for the defendants.  The student was off campus when he died, and no school employee was responsible for his well-being.  Defendants were immune from liability under section 44808.  (*Id.* at p. 744.)

The same reasoning applies here.  LAUSD reacted to Xavier's difficulties with an IEP, a safety plan and counseling. When Xavier showed signs of distress on February 7, 2019, school employees spoke to him, called plaintiff twice, and followed Xavier when he left campus to ensure he arrived home safely.  As in *LeRoy,* Xavier committed suicide off campus, not during school hours.  At that point, "he was not and should not have been supervised by Respondents" and "no one at [the school] had assumed responsibility for his well-being."  (*LeRoy, supra,* 71 Cal.App.5th at p. 744.)

Any alleged failure to do more for Xavier while school was in session, or to follow suicide prevention guidelines, is negated by LAUSD's immunity for student safety after school, unless "the student is involved in activities supervised or undertaken by the school."  (*Ramirez v. Long Beach Unified School Dist.* (2002) 105 Cal.App.4th 182, 190.)  The "reasonable care" requirement in

section 44808 " 'does not create a common law form of general negligence; it refers to the failure to exercise reasonable care during one of the mentioned undertakings.' " (*Cerna v. City of Oakland, supra,* 161 Cal.App.4th at p. 1354.)

Plaintiff relies on *Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, in which a 10-year-old "playing hooky" from school was struck by a motorcycle. Our Supreme Court wrote that in enacting section 44808, "the Legislature was principally concerned with limiting a school district's liability for injuries to pupils either before or after school hours." (*Id.* at p. 517.) It found the school had a duty to supervise the student during the school day. (*Id.* at pp. 518–519.) *Hoyem* involved a negligently supervised student *during* school hours, and " '[w]e entrust the safety of our children to our public school authorities during school hours.' " (*Id.* at pp. 519–520.) By contrast, Xavier committed suicide *after* school, when his parents had a duty to supervise him. *Hoyem* is thus distinguishable.

In *Perna v. Conejo Valley Unified School Dist.* (1983) 143 Cal.App.3d 292, a teacher who kept two students after school hours knew or should have known that the crossing guard would leave and the students could be struck by a car. By delaying the students' departure from campus, the teacher prevented the crossing guard from protecting them. (*Id.* at pp. 295–296.) Here, by contrast, defendants did not directly cause Xavier's injuries, which occurred after he returned home and reentered parental custody.

Plaintiff cites *Brinsmead v. Elk Grove Unified School Dist.* (2023) 95 Cal.App.5th 583, which applied an exception to section 44808. A student "wait[ed] 40 minutes for a school bus that never came," was picked up at the bus stop by a friend, and died

in a crash on the way to school. (*Id.* at p. 586.) Under the transportation exception to section 44808, Elk Grove was responsible because the child "should have been under district supervision by the time she decided to find other transportation." (*Brinsmead*, at pp. 588–589, 592–593.) The transportation exception does not apply to Xavier, who was not and should not have been under district supervision when he committed suicide hours after school ended.

### 3. Defendants Did Not Owe a Duty to Prevent Xavier's Suicide

Plaintiff cannot state a claim for negligence, which requires a duty of care and breach of the duty that proximately causes the claimed injury. (*LeRoy, supra,* 71 Cal.App.5th at p. 742.) The element of duty is a question of law. (*Knight v. Jewett* (1992) 3 Cal.4th 296, 313.) The trial court ruled that defendants did not owe plaintiff a duty to prevent Xavier's suicide.

California imposes no duty to prevent suicide absent a "special relationship" between the defendant and the decedent. (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 296 [no special relationship created when a pastor counsels a suicidal church member].) A special relationship exists between a suicidal patient and the mental hospital caring for him. (*Id.* at pp. 293–294.) Hospitals and prisons are in a unique position to prevent suicide. (*Walsh v. Tehachapi Unified Sch. Dist.* (E.D.Cal. 2014) 997 F.Supp.2d 1071, 1085–1086 (*Walsh*).) "In cases involving suicide, courts have been extremely reluctant to impose liability based on the special relationship exception." (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 277 [police have no duty to prevent a threatened suicide].)

11

A special relationship exists between schools and students, though that relationship, " 'by itself, does not create liability.' " (*Mosley v. San Bernardino City Unified School Dist.* (2005) 134 Cal.App.4th 1260, 1263.)  The relationship places "an affirmative duty on the school district to take all reasonable steps to protect its students."  (*M.W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 517 [school failed to protect a student from being raped in its restroom by another student]; see *Thomas v. Regents of University of California* (2023) 97 Cal.App.5th 587, 627 [cases involving the school-student special relationship present claims of violence or sexual abuse].)

Even with a special relationship, a duty to prevent suicide arises "only where the defendant has *physical custody* and *substantial control* over a person or where the defendant has special training or expertise in mental illness and has *sufficient control* over a person to prevent the suicide."  (*Whooley v. Tamalpais Union High Sch. Dist.* (N.D.Cal. 2019) 399 F.Supp.3d 986, 1001, italics added; *Walsh, supra,* 997 F.Supp.2d at pp. 1085–1086 [school employees are generally not trained to treat mental illness and are not held to a higher standard of care than medical professionals who diagnose mental illness].)

The requirement of custody and control is consistent with the rule that "the special relationship doctrine can impose no greater duty of protection on school districts for off-school-grounds hazards than the Legislature has authorized by statute." (*Searcy v. Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792, 804; *Guerrero v. South Bay Union School Dist.* (2003) 114 Cal.App.4th 264, 268 [government tort liability is based on statute, not on a special relationship].)  The Legislature limits school district liability for student safety to the circumstances

12

listed in section 44808; i.e., during transport, school-sponsored activities, while the student is under the direct supervision of school employees.  The duty to supervise pupils who are not on school property is covered in section 44808.  (*Wolfe v. Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126, 131.)[4]

The TAC does not allege facts showing that LAUSD employees had physical custody or substantial control over Xavier after he left school for the day, went home, walked to an office building, and jumped from it that evening.  With or without special training or expertise in mental illness, LAUSD employees lacked control to prevent Xavier's off-campus, after-hours suicide.  Finally, plaintiff does not contend that defendants engaged in outrageous conduct that caused Xavier to commit suicide.  (*Nally v. Grace Community Church, supra,* 47 Cal.3d at pp. 300–301; *Tate v. Canonica* (1960) 180 Cal.App.2d 898, 909; see *ante*, fn. 2.)

---

[4] Plaintiff does not cite *Rowland v. Christian* (1968) 69 Cal.2d 108 or discuss its factors.

## DISPOSITION

The judgment is affirmed.  The parties to bear their own costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

14