HONORABLE ANDRÉ BIROTTE JR., UNITED STATES DISTRICT COURT JUDGE
*1161 Before the Court is Defendants City of Fontana and Jason Perniciaro's (collectively, "Defendants") Motion to Dismiss and/or Strike Portions of Plaintiffs' Second Amended Complaint, and/or Motion for a More Definite Statement. (Dkt. No. 37.) Plaintiffs Alexander Herd and A.G., by and through her guardian ad litem Amanda Addington, (collectively, "Plaintiffs"), filed an Opposition, (Dkt. No. 38), and Defendants replied, (Dkt. No. 40). After considering the papers filed in support of and in opposition to the instant Motion, the Court found this matter appropriate for decision without oral argument and took the matter under submission. See Fed. R. Civ. P. 78 ; C.D. Cal. L.R. 7-15. (Dkt. No. 42.) For the reasons stated below, Defendants' Motion is GRANTED in part and DENIED in part.
I. BACKGROUND
This case arises out of an officer-involved shooting that occurred on May 31, 2017 in Hesperia, California. (Dkt. No. 33 ("SAC") ¶ 28.) Plaintiffs allege that at approximately 8:00 a.m., Officer Brian Leyva and Officer Jason Perniciaro arrived at the Main Street Walmart parking lot in unmarked vehicles. (Id. ¶ 29.) Plaintiffs state that upon arriving, the officers used their vehicles to "box in" a parked car. (Id. ) The officers then approached the vehicle with their guns drawn. (Id. )
Plaintiffs allege that James Gleason was sitting in the driver's seat of the parked car and Plaintiff Herd was sitting in the front passenger seat. (Id. ) According to Plaintiffs, Officers Leyva and Perniciaro shot several times into the parked car, killing James Gleason and injuring Plaintiff Herd. (Id. ) Plaintiff A.G. is the minor daughter of and successor in interest to Mr. Gleason. (Id. ¶ 5.)
II. LEGAL STANDARD
a. Motion to Dismiss
Federal Rule of Civil Procedure ("Rule") 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must provide enough detail to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The complaint must also be "plausible on its face," allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." Twombly , 550 U.S. at 555, 127 S.Ct. 1955.
Under Rule 12, a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on the motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus , 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). But, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (2009).
*1162 The court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. Anderson v. Angelone , 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. Lee v. City of L.A. , 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of undisputed facts that are contained in extrinsic materials. Mir v. Little Co. of Mary Hosp. , 844 F.2d 646, 649 (9th Cir. 1988) ; Lee , 250 F.3d at 689-90.
b. Motion to Strike
Under Rule 12(f), a party may move to strike any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). A motion to strike is appropriate when a defense is insufficient as a matter of law. Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc. , 677 F.2d 1045, 1057 (5th Cir. 1982). The grounds for a motion to strike must appear on the face of the pleading under attack, or from matters which the Court may take judicial notice. SEC v. Sands , 902 F.Supp. 1149, 1165 (C.D. Cal. 1995). The essential function of a 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty , 984 F.2d 1524, 1527 (9th Cir. 1993).
c. Motion for More Definite Statement
Under Rule 12(e), if a complaint is so vague or ambiguous that the opposing party cannot reasonably frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. Fed. R. Civ. P. 12(e). "A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her." San Bernardino Pub. Employees Ass'n v. Stout , 946 F.Supp. 790, 804 (C.D. Cal. 1996).
A motion for a more definite statement must be considered in light of Rule 8's liberal pleading standards in federal court. See, e.g. , Bureerong v. Uvawas , 922 F.Supp. 1450, 1461 (C.D. Cal. 1996). Rule 8 requires only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Hence, "[m]otions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." Sagan v. Apple Comput., Inc. , 874 F.Supp. 1072, 1077 (C.D. Cal. 1994).
III. DISCUSSION
Defendants point to numerous alleged deficiencies in Plaintiffs' Second Amended Complaint ("SAC"). The Court addresses each in turn.
a. Plaintiffs' SAC Provides Fair Notice to Defendants
First, Defendants complain that Plaintiffs' SAC fails "to adequately apprise Defendants of the nature of the liability theories they face in this action." (Dkt. No. 37 ("Mot.") at 3.) Defendants argue that Plaintiffs repeat and re-allege all previous allegations in each count, which apparently prevents the Defendants from understanding "who is suing whom, for what relief, on what theory, and with enough detail to guide discovery." (Id. at 4.) Plaintiffs respond that their claims are clearly presented and state exactly which defendants the claim applies to. (Dkt. No. 38 ("Opp'n") at 4.)
*1163 Defendants cite numerous cases where courts have dismissed a complaint on these grounds; however, these cases are largely distinguishable from the case at hand. For example, in McHenry v. Renne , the Ninth Circuit stated that the dismissed complaint was far from short and plain and instead was "argumentative, prolix, replete with redundancy, and largely irrelevant." 84 F.3d 1172, 1177 (9th Cir. 1996). The Court went on to explain that the complaint "consist[ed] largely of immaterial background information" that did not assist in the determination of who was being sued, for what relief, and on what theory. Id. at 1178. Similarly, in Salazar v. County of Orange , the court explained that it was unclear whether Plaintiff was bringing each claim against all or only some of the defendants, and instructed the Plaintiff to include the specific names of defendants in the header of each claim. No. SACV 11-1125 AG (MLGx), 2012 WL 12896364, at *2 (C.D. Cal. July 10, 2012).
Plaintiffs' SAC is unlike those in McHenry and Salazar . The background information is short and clearly lays out facts relevant to each claim for relief; no unnecessary or irrelevant information is included. Further, although Plaintiffs reincorporate previous allegations in each new claim, and reallege much of the background in each claim, the allegations are still clear.[1] Plaintiffs allege which defendant each claim applies to and whether Plaintiff A.G. asserts the claim in her individual or representative capacity.
Applying Rule 8's liberal pleading standard, the Court finds Plaintiffs' allegations sufficiently apprise Defendants of the claims and their bases and is far from unintelligible. Moreover, other defendants have already answered the SAC, which tends to refute Defendants' contention that the SAC is too confusing to answer. Thus, Defendants' Motion for a More Definite Statement is DENIED .
b. Plaintiff A.G. May Not Assert Claims for Excessive Force and Denial of Medical Care in her Individual Capacity
Second, Defendants argue that Plaintiff cannot assert her first and second claims for relief-excessive force and denial of medical care, respectfully-in her personal capacity. (Mot. at 6; see SAC ¶¶ 48, 61.) The United States Supreme Court has held that constitutional rights under 42 U.S.C. § 1983 are personal to the individual and may not be asserted by a third party. See Alderman v. United States , 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) ; Moreland v. Las Vegas Metro. Police Dep't , 159 F.3d 365, 369 (9th Cir. 1998) ("[O]nly the person whose Fourth Amendment rights were violated can sue to vindicate those rights."); Smith v. City of Fontana , 818 F.2d 1411, 1417 (9th Cir. 1987) (holding that victim's children "were not directly subjected to the excessive use of state force and therefore cannot maintain personal causes of action under section 1983 in reliance on this Fourth Amendment theory"). Accordingly, Defendants ask the Court to dismiss Plaintiff A.G.'s individual claims for excessive force and denial of medical care, and strike her corresponding request for wrongful death damages. (Mot. at 7.)
Plaintiffs do not directly respond to Defendants' argument that Plaintiff A.G. may not bring these two claims in her individual capacity. Indeed, the case law is clear that Plaintiff A.G. may not bring these claims personally because she was not directly *1164 subjected to excessive force or denied medical treatment. See Smith , 818 F.2d at 1417 ; see also Rose v. City of Los Angeles , 814 F.Supp. 878, 882 (C.D. Cal. 1993) (dismissing claim with prejudice where the plaintiff attempted to recover on her own behalf for alleged excessive force imposed upon decedent). Accordingly, Defendants' Motion to Dismiss is GRANTED with prejudice as to Plaintiff A.G.'s individual claims for excessive force and denial of medical treatment.
Instead, Plaintiffs' Opposition focuses on Defendants' demand to strike Plaintiff A.G.'s corresponding request for wrongful death damages. (See Opp'n at 10-11.) Essentially, Plaintiffs argue that it is improper to strike the reference to wrongful death damages because, according to Plaintiffs, some courts have allegedly recognized a claim under § 1983 for wrongful death. In response, Defendants argue that if Plaintiff A.G.'s individual claims are dismissed, she cannot pursue "damages specific to an individual's loss, such as the 'wrongful death' damages alleged at Paragraphs 48 and 61 of the SAC." (Dkt. No. 40 ("Reply") at 10.)
The court in Estate of Lopez considered similar arguments. 105 F.Supp.3d 1148, 1158-59 (S.D. Cal. 2015). There, the plaintiff alleged an excessive force claim under § 1983and a separate claim for wrongful death under § 1983. The defendants moved to dismiss the latter on the grounds that wrongful death is a state law claim. In evaluating the parties arguments, the court explained:
The confusion seems to be that some courts (primarily unpublished dispositions) have allowed claims for wrongful death under § 1983 to proceed. In Arce v. Blackwell , 294 Fed.Appx. 259 (9th Cir. 2008), the court described the plaintiff's action as "a wrongful death civil rights action ... under 42 U.S.C. § 1983." Though the plaintiff alleged that the defendant deprived her deceased husband of his rights under the Fourth and Fourteenth Amendments, the court analyzed the plaintiff's claim as an excessive force claim arising under the Fourth Amendment. Arce , 294 Fed.Appx. at 260-61. Likewise, in Gaxiola v. City of Richmond Police Dep't , 131 Fed.Appx. 508 (9th Cir. 2005), the plaintiff brought a " 42 U.S.C. § 1983 wrongful death action." Again, despite the styling of the complaint, the court analyzed the claim as a Fourth Amendment excessive force claim. Gaxiola , 131 Fed.Appx. at 509. In Estate of Manzo v. Cty. of San Diego, No. 06-60, 2008 WL 4093818, at *1-3 (S.D. Cal. Sept. 3, 2008), the decedent's estate alleged causes of action for wrongful death under § 1983 and state law. The court analyzed the § 1983 wrongful death claim as a Fourth Amendment excessive force claim. Estate of Manzo, 2008 WL 4093818, at *1-3. What is clear from these cases is that even if the claim was described in the pleadings as a wrongful death claim under section 1983, the courts only allowed such claims to be maintained if they were construed as Fourth Amendment excessive force claims.
Estate of Lopez , 105 F.Supp.3d at 1159. Based on these cases, the Lopez court ultimately held that the plaintiff could only proceed with a wrongful death cause of action under § 1983 if the court construed it as an excessive force claim. Id. at 1160.
The Court agrees that there seems to be confusion stemming from the language used to describe these claims as well as regarding the difference between wrongful death and survivor actions. First, wrongful death actions involve claims by the decedent's relatives to recover for their own injuries, caused by the death of their loved one. See Cal. Civ. Proc. Code § 377.60 et seq. (West 2015). In contrast, survivor actions are based on the decedent's individual *1165 claims that he would have been entitled to assert for his own injuries. See Cal. Civ. Proc. Code § 377.10 et seq. Both claims arise under state law, and the difference is essentially a question of to whom the damages belong.
However, despite the muddled language used by some courts, only survivor actions may be brought pursuant to 42 U.S.C. § 1983. As noted above, Fourth Amendment rights are personal "and may not be vicariously asserted." Alderman , 394 U.S. at 174, 89 S.Ct. 961. "In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." Moreland , 159 F.3d at 369 (citing 42 U.S.C. § 1988(a) ; Smith , 818 F.2d at 1416-17 ).
Here, Plaintiffs allege that "Defendants' unjustified shooting of HERD and DECEDENT violated HERD's and DECEDENT's rights to be secure in their person against unreasonable or excessive force as guaranteed under the Fourth Amendment." (SAC ¶ 43.) Thus, it is clear that Plaintiffs' cause of action is based on the alleged use of excessive force. If the underlying constitutional violation alleged is excessive force, then the § 1983 claim may not be brought as a wrongful death action to vindicate the rights of Plaintiff A.G. because Fourth Amendment rights are personal to the decedent. And here, Plaintiffs actually frame their first claim as an excessive force claim; the issue only arises because Plaintiffs later request wrongful death damages. To the extent Plaintiffs also allege a § 1983 wrongful death claim on behalf of Plaintiff A.G., that claim would be duplicative of Plaintiffs' excessive force claim.
Plaintiffs rely on Mendoza v. City of W. Covina , 206 Cal. App. 4th 702, 141 Cal.Rptr.3d 553 (Ct. App. 2012) to support their position that a cause of action exists under § 1983 for wrongful death. There, the plaintiffs "sought wrongful death damages through a civil rights cause of action under" 42 U.S.C. § 1983. Mendoza , 206 Cal. App. 4th at 711, 141 Cal.Rptr.3d 553. But, as in the cases cited above, although the court referred to the claim as a wrongful death claim, it analyzed the claim as an excessive force claim. See id. at 712-15, 141 Cal.Rptr.3d 553 (analyzing the circumstances under which qualified immunity applies to use of excessive force cases). Therefore, the Court does not find that Mendoza supports the contention that a separate cause of action lies for excessive force and wrongful death under § 1983.
Plaintiffs also cite Whittlestone, Inc. v. Handi-Craft Co. , 618 F.3d 970 (9th Cir. 2010) to support their argument that the damages request should not be stricken. There, the plaintiff sued for breach of contract and sought recovery of lost profits and consequential damages. Id. at 973. The defendant subsequently moved to strike the damages request, arguing that such damages were barred by the parties' contract. The lower court granted the defendant's motion to strike, finding that the contract clearly excluded the damages sought. The Ninth Circuit reversed, finding that the plaintiff's request for lost profits and consequential damages was not (1) an insufficient defense, (2) redundant, (3) immaterial, (4) impertinent, or (5) scandalous, and therefore could not be stricken under Rule 12(f). Id. at 974. The court also noted that requesting the damages be stricken "was really an attempt to have certain portions of Whittlestone's complaint dismissed or to obtain summary judgment against Whittlestone as to those portions of the suit." Id.
Whittlestone is distinguishable from the case at hand. There, the defendants merely moved to strike the request for damages, which the court found to be an improper *1166 attempt to dismiss certain of the plaintiff's claims. Here, however, Defendants also move to dismiss Plaintiff A.G.'s individual claim for excessive force or wrongful death under § 1983. Since the Court addressed the confusion surrounding this issue and determined that a claim lies under § 1983 for survivor actions only, it dismissed Plaintiff A.G.'s individual excessive force and denial of medical treatment claims. See supra at p. 1164. Without individual claims, Plaintiff would not be entitled to damages for her own injury-in other words, Plaintiff would not be entitled to wrongful death damages on these claims. This is unlike the situation in Whittlestone where the Court merely considered whether the request should be stricken and did not consider whether the claim itself was subject to dismissal.
Further, the Court in Whittlestone found that the allegations at issue did not fall into any of the five categories of material that may be stricken under Rule 12(f). Based on the above analysis, the Court finds that the wrongful death allegations in paragraphs 43 and 61 are both immaterial and impertinent. They are immaterial because they have no relationship to § 1983 claims for excessive force or denial of medical treatment brought by a successor in interest, and are impertinent because they do not pertain to the issues raised by these claims which center on the decedent's injury. See Whittlestone , 618 F.3d at 974.
Accordingly, the Court orders Plaintiffs' requests for wrongful death damages in paragraphs 43 and 61 STRICKEN . In the event Plaintiffs purport to allege a wrongful death claim under § 1983 in addition to their excessive force claim, any claim is hereby DISMISSED as duplicative.
c. Plaintiffs' Fourth, Fifth, and Sixth Claims for Municipal Liability Are Insufficiently Pled
Plaintiffs' fourth, fifth and sixth causes of action allege municipal liability on three grounds: (1) unconstitutional custom or policy, (2) ratification, and (3) failure to train, respectively. A local governmental entity can be sued under § 1983 where a municipal policy or custom has caused an alleged violation of constitutional rights. Monell v. Dep't of Social Servs. of City of New York , 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality cannot, however, be held liable under § 1983"solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691, 98 S.Ct. 2018 (emphasis original). See also Bd. of Cty. Comm'rs v. Brown , 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior.").
Generally, a plaintiff can demonstrate municipal liability for a constitutional violation in one of three ways. First, he can show that a person or entity with decision-making authority within the municipality expressly enacted or authorized an unconstitutional policy or gave an unconstitutional order. See Monell , 436 U.S. at 694, 98 S.Ct. 2018 (holding that municipal liability is properly imposed where a policymaker "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"); Pembaur v. City of Cincinnati , 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question"). Second, a plaintiff can prove that his injury was the result of a municipal custom, i.e., a practice "so permanent and settled" as to constitute a *1167 "custom or usage" of the municipal defendant. See Monell , 436 U.S. at 691, 98 S.Ct. 2018 ; see also Pembaur , 475 U.S. at 481-82 n.10, 106 S.Ct. 1292. Finally, a local governmental body may be liable if its failure to train employees has caused a constitutional violation and the failure to train amounts to deliberate indifference to the rights of individuals with whom those employees come into contact. See City of Canton v. Harris , 489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).
After Iqbal , "[a]llegations of Monell liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur." Young v. City of Visalia , 687 F.Supp.2d 1141, 1163 (E.D. Cal. 2009) ; see also Harvey v. City of S. Lake Tahoe , No. CIV S-10-1653 KJM EFB PS, 2011 WL 3501687, *3 (E.D. Cal. Aug. 9, 2011) (dismissing plaintiff's municipal liability claims because "Plaintiff has not identified any [municipal] policy or custom in his first amended complaint, has not alleged that the ... employees acted pursuant to a County policy or custom, and has not alleged that their conduct conformed to an official policy or custom. Additionally, because he has not identified any such policy or custom, he also has not explained how the policy or custom is deficient, has not explained how the policy or custom caused him harm, and has not explained how the policy or custom amounted to deliberate indifference." (citations omitted) ).
1. Unconstitutional Policy or Custom
Only "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity" will support the imposition of municipal liability. Menotti v. City of Seattle , 409 F.3d 1113, 1147 (9th Cir. 2005) (citing Ulrich v. City and Cty. of San Francisco , 308 F.3d 968, 984-85 (9th Cir. 2002) ). Although the Supreme Court has held that a heightened pleading standard does not apply to § 1983 claims alleging municipal liability, Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit , 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), Plaintiffs' claim against the City and County defendants must still meet the plausibility requirement delineated in Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id. (quoting Twombly , 550 U.S. at 555, 557, 127 S.Ct. 1955 ); al-Kidd v. Ashcroft , 580 F.3d 949, 974 (9th Cir. 2009) (stating that Iqbal clarified that the pleading requirements outlined in Twombly apply to civil rights cases); Soukup v. Garvin , Civil No. 09-cv-146-JL, 2009 WL 2461687, at *1 (D.N.H. Aug. 11, 2009) (applying the standards outlined in Iqbal and Twombly to a municipal liability claim under § 1983 ).
Plaintiffs argue that their fourth claim is adequately pled because they allege all the elements of a Monell claim for unconstitutional custom or policy. (Opp'n at 8.) In paragraph 81, Plaintiffs set forth eleven "customs, practices, or policies" alleged to have caused the constitutional violation at issue, including "[u]sing excessive and objectively unreasonable force," "[p]roviding inadequate training regarding the use of deadly force," [e]mploying and retaining as officers and other personnel ... whom Defendants CITY ... [and] COUNTY ... knew or reasonably should have known had dangerous propensities for abusing *1168 their authority and using excessive deadly force," and [i]nadequately supervising, training, controlling, assigning and disciplining officers." (SAC ¶ 81.) Plaintiffs also allege that Officer Perniciaro was employed by the City of Fontana, was acting in the course and scope of his employment at the time of the incident, shot Mr. Herd and Decedent, and as a result of the shooting violated Mr. Herd and Decedent's rights to be free from unreasonable searches and seizures and right to substantive due process, and caused Plaintiffs' damages. (See SAC ¶¶ 11, 29, 31, 33, 34, 43, 45.)
Even under the liberal pleading standard established by Iqbal and Twombly , Plaintiffs' allegations with respect to the alleged customs and policies are likely deficient. Plaintiffs fail to allege any facts showing that any of these claimed policies or customs actually exist. Furthermore, even assuming Plaintiffs properly alleged customs and policies, Plaintiffs do not explain how the alleged policies are deficient or reflect on how the custom or policy amounted to deliberate indifference. Merely alleging that "Defendants acted with deliberate indifference" is conclusory and does not show that the alleged deficiencies were "obvious and the constitutional injury was likely to occur." See Johnson v. Baca , No. CV 13-04496 MMM (AJWx), 2013 WL 12131358, at *13 (C.D. Cal. Sept. 24, 2013) (dismissing Monell claim where the complaint failed "to allege any facts showing the existence of this custom or practice" and did not "allege the substance of the County defendants' current policy or explain why it is inadequate"); see also Shoval v. Sobzak , No. 09-CV-01348-H (JMA), 2009 WL 2780155, at *2 (S. D. Cal. Aug. 31, 2009) (allegations that senior officers of the San Diego Sheriff's Department authorized, sanctioned and ratified an individual defendant's unconstitutional actions, that the County failed to train or supervise the individual defendant in a reckless or grossly negligent manner, and that it was the Sheriff's Department's custom to allow officers to "proceed without supervision and with explicit authorization to use unconstitutional means" did not state a municipal liability claim because plaintiff did "not allege any facts to support holding the County of San Diego liable under one of the theories that can show a policy or custom of a municipality. These bare bone allegations are little more than a formulaic recitation of the elements of a municipal civil rights claim and are insufficient to raise Plaintiff's right to relief above the speculative level"); see also Missel v. Cty. of Monroe , 351 Fed.Appx. 543, 545 (2d Cir. 2009) (upholding the dismissal of a municipal liability claim that alleged that defendant "acted pursuant to Monroe County policies of 'permitting deputies to publish false statements' and 'targeting perceived pedophiles ... for harassment,' " because "allegations that [police] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient").
Accordingly, Plaintiffs' Fourth Claim for Municipal Liability based on Unconstitutional Custom or Policy is DISMISSED .
2. Failure to Train
Plaintiffs also assert that the municipal defendants failed to provide adequate training to Officers Leyva and Perniciaro, "including with regard to the use of deadly force generally, and with respect to shooting at motor vehicles and their occupants" and "were deliberately indifferent to the obvious consequences of its failure to train its officers adequately." (SAC ¶¶ 101, 102.) But again, Plaintiffs provide no facts regarding the training the officers received and do not explain why the training was inadequate. Plaintiffs also assert the conclusion that the municipal defendants acted with deliberate indifference, without explaining how the alleged failure to train was likely to result in a constitutional *1169 violation. See Young , 687 F.Supp.2d at 1149, (noting that allegations of inadequate training and hiring practices were "threadbare" because the complaint did "not identify what the training and hiring practices were, how the training and hiring practices were deficient, or how the training and hiring practices caused Plaintiffs' harm"). Accordingly, Plaintiff's Sixth Claim for Inadequate Training is also DISMISSED .
3. Ratification
Plaintiffs assert that "a final policymaker, acting under color of law, who had final policymaking authority ... ratified (or will ratify) the individual Defendants' acts and the bases for them." (SAC ¶ 92.) Plaintiffs argue that "a reasonable inference can be drawn that a final policymaker approved the shooting because (on information and belief) Officer Perniciaro has not been retrained, suspended, fired, or otherwise disciplined for shooting Decedent and Mr. Herd." (Opp'n at 9.)
"A municipality ... can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." Christie v. Iopa , 176 F.3d 1231, 1239 (9th Cir. 1999). To show ratification, a plaintiff must show that the "authorized policymakers approve a subordinate's decision and the basis for it." Lytle v. Carl , 382 F.3d 978, 987 (9th Cir. 2004) (internal citations omitted). The policymaker must have knowledge of the constitutional violation and actually approve of it; a mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim. Id. ; see also Koenig v. City of Bainbridge Island , No. C10-5700 RJB, 2011 W L 3759779, at *8 (W.D. Wash. Aug. 25, 2011) (stating that "in order for there to be ratification, there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures"); Garcia v. City of Imperial , No. 08cv2357 (BTM)PTM, 2010 WL 3911457, at *2 (S.D. Cal. Oct. 4, 2010) (explaining what the police chief knew about the situation and holding that chief's determination that the officer acted according to policy did not rise to the level of ratification of the use of excessive force); Santiago v. Fenton , 891 F.2d 373, 382 (1st Cir. 1989) ("As we have indicated before, we cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under Monell .").
Plaintiffs ratification claim falls short. The SAC lacks factual allegations with respect to what the alleged unnamed "policymaker" knew about the situation or that he or she specifically approved of the decision and the basis for it. Here, Plaintiffs do not even allege that the policymaker found Defendant Perniciaro's conduct to be within policy, and the mere fact that he allegedly has not been disciplined for the decision is insufficient to establish ratification. Further, Plaintiffs fail to address Defendants' ripeness and survivor arguments. To the extent that Plaintiffs allege ratification has yet to occur, the claim is premature and must be dismissed on those grounds. To the extent Plaintiff A.G. alleges a claim for ratification as decedent's successor in interest, that claim also must fail. The Ninth Circuit has held that § 1983 does not provide a cause of action on behalf of a deceased person based upon an alleged violation of the decedent's civil rights which occurred after his death. Guyton v. Phillips , 606 F.2d 248, 250 (9th Cir. 1979). Any ratification of the officers' conduct necessarily occurred after decedent's death, and cannot form the basis of a § 1983 survivor claim.
Accordingly, Plaintiffs' Fifth Claim for Ratification is DISMISSED for failure to *1170 state a claim. Any ratification claim asserted on behalf of decedent through Plaintiff A.G. as his successor is DISMISSED with prejudice for the reasons outlined above and because Plaintiffs failed to address this argument in their Opposition.
d. Plaintiffs' Seventh Claim Is Insufficiently Pled as to Plaintiff A.G. Individually
Plaintiff A.G. asserts her Seventh Claim for Negligence individually and as decedent's successor in interest. (SAC ¶ 119.) To prevail on her negligence claim, Plaintiff must allege that Defendants owed her a legal duty, that they breached that duty, and that the breach was a proximate or legal cause of her injuries. Merrill v. Navegar, Inc. , 26 Cal. 4th 465, 477, 110 Cal.Rptr.2d 370, 28 P.3d 116 (2001) (citing Sharon P. v. Arman, Ltd. , 21 Cal. 4th 1181, 1188, 91 Cal.Rptr.2d 35, 989 P.2d 121 (1999) ). Defendants contend that Plaintiff A.G. has failed to allege facts that would support a finding that Defendants owed her a duty. (Mot. at 12.)
Plaintiffs allege that police officers "have a duty to use reasonable care to prevent harm or injury to others." (SAC ¶ 109.) Specifically, Plaintiffs assert that Defendants were negligent in (1) failing to properly and adequately assess the need to use force against Plaintiff Herd and decedent, (2) the use of force against Plaintiff Herd and decedent, (3) the tactics and handling of the situation with Plaintiff Herd and decedent, (4) their post-shooting conduct including the failure to summon or provide adequate medical care to Plaintiff Herd and decedent, (5) the handling of witnesses and evidence, and (6) the communication of information during and prior to the incident. (SAC ¶ 110.) However, all of these allegations pertain to a duty owed to Plaintiff Herd and decedent-not to Plaintiff A.G. in her individual capacity. Accordingly, Plaintiff's individual claim for negligence is DISMISSED .
e. Plaintiffs' Eighth and Ninth Claims Are Insufficiently Pled as to Plaintiff A.G. Individually
Plaintiff A.G. also asserts her Eighth and Ninth Claims for Battery and violation of the Bane Civil Rights Act, respectively, in her individual capacity. (SAC ¶¶ 133, 151.) Defendants argue that this is improper because these claims are personal to the decedent and cannot be vicariously asserted. (Mot. at 13.) In their Opposition, Plaintiffs concede that defendants did not commit battery against or negligently use force against Plaintiff A.G. (Opp'n at 13.) But, Plaintiffs contend that Plaintiff A.G. may still seek wrongful death damages on these claims pursuant to California Civil Procedure Code sections 377.60 and 377.61. (Id. )
If it was Plaintiffs' intention to assert a wrongful death claim under these state law provisions, it is not apparent from the SAC. Plaintiff do not specifically allege claims for wrongful death, but instead merely request wrongful death damages in each claim, even in those that cannot be brought by Plaintiff A.G. in her individual capacity. See Bay Area Rapid Transit Dist. v. Superior Court , 38 Cal. App. 4th 141, 145, 44 Cal.Rptr.2d 887 (Ct. App. 1995) (explaining that the Bane Act "is limited to plaintiffs who themselves have been the subject of violence or threats"); Bresaz v. Cty. of Santa Clara , 136 F.Supp.3d 1125, 1137 (N.D. Cal. 2015) ("[a] party lacks standing to bring a claim under the Bane Act when the party does not claim to have personally suffered a violation of a constitutional or statutory right.") Even if Plaintiff may assert such claims under state law, they are missing from the SAC as it stands, and Plaintiffs cannot assert them via their Opposition.
To the extent Plaintiff A.G. asserts individual claims for battery and violation of the Bane Act, these claims are DIS MISSED with prejudice *1171 . Any corresponding request for wrongful death damages is hereby STRICKEN for the reasons stated above as to Plaintiffs' excessive force claim. See supra at pp. 1165-66. If Plaintiffs wish to allege claims for wrongful death under California law, they may attempt to do so by filing an amended complaint.
f. Plaintiffs' Tenth Claim for Negligent Training Is Insufficient as it Fails to Plead A Statutory Basis Authorizing Suit
Plaintiffs' Tenth Claim is entitled "Negligent Training." Plaintiffs allege that the municipal defendants negligently failed to properly or adequately train Officers Perniciaro and Leyva with regard to the use of deadly force and shooting at occupants of motor vehicles. (SAC ¶ 158.) Defendants argue that Plaintiffs have failed to plead a statutory basis authorizing suit against Defendant City of Fontana for negligent training. (Mot. at 14.)
In California, all government tort liability is dependent on the existence of an authorizing statute or "enactment." Cal. Gov. Code § 815(a), 815.6 ; Tolan v. State of Cal. ex rel. Dep't of Transp. , 100 Cal. App. 3d 980, 983, 161 Cal.Rptr. 307 (1979) ; Morris v. State , 89 Cal. App. 3d 962, 964, 153 Cal.Rptr. 117 (1979) ; Susman v. City of Los Angeles , 269 Cal. App. 2d 803, 808, 75 Cal.Rptr. 240 (1969). To state a cause of action, every fact essential to the existence of statutory liability must be pleaded with particularity, including the existence of a statutory duty. Susman , 269 Cal. App. 2d at 809, 75 Cal.Rptr. 240. Duty cannot be alleged simply by stating "defendant had a duty under the law"; that is a conclusion of law, not an allegation of fact. The facts showing the existence of the claimed duty must be alleged. Id. ; see also Rubinow v. Cty. of San Bernardino , 169 Cal. App. 2d 67, 71, 336 P.2d 968 (1959). "Since the duty of a governmental agency can only be created by statute or 'enactment,' the statute or 'enactment' claimed to establish the duty must at the very least be identified." Searcy v. Hemet Unified Sch. Dist. , 177 Cal. App. 3d 792, 802, 223 Cal.Rptr. 206 (1986).
In their Opposition, Plaintiffs cite California v. William S. Hart High School District , 53 Cal. 4th 861, 138 Cal.Rptr.3d 1, 270 P.3d 699 (2012) for the proposition that California Government Code sections 815.2 and 820 provide a basis for a negligent training, hiring, retention, and supervision claim. (Opp'n at 15.) In William S. Hart , the California Supreme Court considered whether school personnel had a duty to hire, train, supervise, and discharge other school personnel. The Court found that such a duty existed in the school context, and explained "that the potential legal responsibility of District administrators and supervisors for negligently hiring or retaining Hubbell arises from the special relationship they had with plaintiff, a student under their supervision, which relationship entailed the duty to take reasonable measures to protect plaintiff from injuries at the hands of others in the school environment." William S. Hart High Sch. Dist. , 53 Cal. 4th at 877, 138 Cal.Rptr.3d 1, 270 P.3d 699. The Court went on to state, however, that "[a]bsent such a special relationship, there can be no individual liability to third parties for negligent hiring, retention or supervision of a fellow employee, and hence no vicarious liability under section 815.2." Id.
For example, in Munoz v. City of Union City , 120 Cal. App. 4th 1077, 1081-82, 16 Cal.Rptr.3d 521 (2004), the relatives of a woman shot by police, who had been summoned because of her erratic behavior, sued the officer who shot her and his employing city. The appellate court held the city could be vicariously liable for the officer's unreasonable use of deadly force, but rejected a theory of direct liability *1172 based on the city's negligence "in the selection, training, retention, supervision, and discipline of police officers." Id. at 1112, 16 Cal.Rptr.3d 521. As no statute made a public entity liable for this type of negligence, no direct liability could be established under section 815 as interpreted in Eastburn v. Regional Fire Protection Authority , 31 Cal. 4th 1175, 7 Cal.Rptr.3d 552, 80 P.3d 656 (2003). Munoz , at 1110-13, 16 Cal.Rptr.3d 521. The court went on to reject the plaintiffs' argument that the city's negligence was actually the basis for vicarious liability because public entities' negligence liability is inherently vicarious. "[W]hile respondents are correct insofar as they state public entities always act through individuals, that does not convert a claim for direct negligence into one based on vicarious liability .... To accept respondents' argument would render the distinction between direct and vicarious liability completely illusory in all cases except where the employer is an individual." Id. at 1113, 16 Cal.Rptr.3d 521.
Similarly, de Villers v. County of San Diego , 156 Cal. App. 4th 238, 67 Cal.Rptr.3d 253 (2007) involved a claim of public liability for a county toxicologist's murder of her husband with poison taken from the county coroner's office where she worked. Conceding the county could not be vicariously liable for the toxicologist's murderous acts-which were obviously outside the scope of her employment-the plaintiffs proposed theories of direct and vicarious liability for the county's negligence in hiring and supervising her. Id. at 248, 67 Cal.Rptr.3d 253. The appellate court rejected direct liability on the ground that the plaintiffs had failed to "identify any statutory basis supporting a direct claim against a governmental entity for injuries allegedly caused by the entity's generic negligence in hiring and supervising its employees." Id. at 253, 67 Cal.Rptr.3d 253. Nor, under section 815.2, could the county be vicariously liable for its employees' failure to properly investigate the toxicologist when she was hired or to guard against her theft of poisonous drugs, as "there was no evidence supporting a conclusion any County employee had undertaken a special protective relationship toward de Villers." Id. at 249, 67 Cal.Rptr.3d 253. In the absence of such a special relationship, the toxicologist's supervisors and coworkers owed her husband no duty to prevent his murder and could therefore not be personally liable for his death, defeating public entity liability under section 815.2. Id. at. 249-51, 67 Cal.Rptr.3d 253.
Plaintiffs do not explain how their situation is similar to that of the plaintiffs in William S. Hart or allege that a special relationship existed between them and the officers. Indeed, courts have found that a special relationship does not exist in similar circumstances. See Munoz , 120 Cal. App. 4th at 1112, 16 Cal.Rptr.3d 521 ; de Villers , 156 Cal. App. 4th at 249-51, 67 Cal.Rptr.3d 253. Accordingly, the Court finds that Plaintiffs have failed to allege a statutory basis for their Negligent Training claim. Plaintiffs' Tenth Claim for Negligent Training is therefore DISMISSED .
g. Plaintiffs' References to Decedent's "Pain and Suffering"
Lastly, Defendants argue that all allegations regarding decedent's pain and suffering must be stricken. (Mot. at 15.) Defendants contend that under California law, a successor-in-interest is prohibited from recovering damages for pain, suffering, disfigurement, or emotional distress. (Id. ) However, in their Reply, Defendants concede that the Ninth Circuit permits Plaintiffs to pursue damages under their federal claims for decedent's pain and suffering. (Reply at 13.) Thus, the only question is whether the references to decedent's pain and suffering should be stricken from Plaintiffs' state law claims. (See SAC ¶¶ 112, 127, 145.)
*1173 Under Rule 12(f), a party may move to strike any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The references to decedent's pain and suffering are not an insufficient defense, nor are they scandalous. Thus, the only grounds for striking the references are redundancy, immateriality, or impertinency. In a sense, the references are redundant because Plaintiffs allege the exact same sentence in every single claim, even under those claims to which Plaintiffs acknowledge no pain and suffering damages may be recovered. (See ¶¶ 31, 45, 58, 67, 84, 93, 104, 112, 127, 145, 164.) As to Plaintiffs' state law claims, the references to decedent's pain and suffering are also immaterial. See Fantasy, Inc. v. Fogerty , 984 F.2d 1524, 1527 (9th Cir. 1993) ("Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead.") Reference to decedent's pain and suffering has no essential or important relationship to the state law claims because it is clearly established that pain and suffering damages are not recoverable under those claims. Similarly, the references are impertinent as to Plaintiffs' state law claims. See ids="10519091" index="160" url="https://cite.case.law/f2d/984/1524/#p1527">id. ("Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question.") The references to decedent's pain and suffering in Plaintiffs' state law claims do not pertain to the issues in question regarding liability. Accordingly, the Court STRIKES the references to decedent's pain and suffering from paragraphs 112, 127, and 145, which correspond to Plaintiffs' state law claims under which damages for pain and suffering may not be recovered.
IV. CONCLUSION
For the foregoing reasons, Defendants' Request for a More Definite Statement is DENIED . Defendants' Motion to Dismiss and/or Strike Portions of Plaintiffs' SAC is GRANTED in part and DENIED in part . Plaintiffs' first and second claims are DISMISSED as to Plaintiff A.G.'s individual claims only. Plaintiffs' fourth, fifth, and sixth claims are DISMISSED . Plaintiffs' seventh, eighth, and ninth claims are DISMISSED as to Plaintiff A.G.'s individual claims only. Plaintiffs' tenth claim is DISMISSED . References to wrongful death damages are STRICKEN from paragraphs 43 and 61, and references to decedent's pain and suffering are STRICKEN from paragraphs 112, 127, and 145.
Plaintiffs may attempt to cure the deficiencies outlined above by filing a third amended complaint within fourteen (14) days of this Order.
IT IS SO ORDERED.

The Court notes, however, that much of Plaintiffs' reincorporation is unnecessarily. For example, Plaintiffs include a section of facts that "apply to all claims," yet goes on to reincorporate and reallege those same facts in each claim. More streamlined allegations are preferable.